## Escovitz Estate

Before Soffel, Weiss and Cerone, JJ.

*Joseph I. Marshall* and *Reed, Smith, Shaw & Mc-Clay,* for petitioner.

*Wilner, Wilner & Kuhn* and *Arthur E. Ashton,* for respondent.

SOFFEL, J., November 28, 1958.—This case comes before the court on petition for confirmation of the first and final account and discharge of Mellon National Bank and Trust Company, successor guardian of the estate of Joseph Escovitz, an incompetent, and on rule to show cause why funds in the hands of said successor guardian should not be paid over to the administrator of the estate of Joseph Escovitz, a presumed decedent.

Joseph Escovitz, an incompetent, was decreed a presumed decedent on November 14, 1957, by the Orphans' Court of Allegheny County, at no. 4083 of 1957. The date on which the legal presumption of his death was made out and established was August 5, 1957, seven years after the date on which he was last seen or heard from. Letters of administration upon the estate of said presumed decedent were issued to

Henry Escovitz on November 20, 1957, by the Register of Wills of Allegheny County.

The administrator of the estate of the presumed decedent made demand upon Mellon National Bank and Trust Company, successor guardian of the Estate of Joseph Escovitz, an incompetent, for the funds in its hands belonging to said estate.

The successor guardian filed its account in this court showing a balance for distribution in the amount of $4,831.85. On presentation of its petition for confirmation of the account, demand was made by the Administrator of Veteran's Affairs to be reimbursed in the sum of $3,986 for sums allegedly paid by mistake by the Veteran's Administration to the successor guardian from August 5, 1950, through March 31, 1953.

When the successor guardian's petition for discharge and confirmation of its first and final account was presented on September 19, 1958, the Hon. John J. Kennedy, then presiding in the assignment room, granted a rule to show cause why the sum of $3,986 claimed by the Veteran's Administration should not be paid to the administrator of the estate of Joseph Escovitz, a presumed decedent.

Joseph Escovitz was a veteran of World War I who received payments from the Veteran's Administration for 80 percent service-connected disability. Payments of compensation were released to the guardian on behalf of the veteran from April 10, 1934, to March 31, 1953. No question arises with respect to payments to the guardian prior to August 5, 1950. From August 5, 1950, to July 1952, payments were made at the rate of $120 a month and from July 1952 to March 31, 1953, at the rate of $138 a month, or a total payment in the amount of $3,986.

On March 24, 1953, the Veteran's Administration was informed that the veteran's whereabouts were

unknown and had been unknown since August 5, 1950. In accord with the Veteran's Administration Regulation 1281, 38 CFR 3.281, payments in behalf of said veteran were stopped, effective March 31, 1953.

The question to be determined is this:

Was the sum of $3,986 paid to the successor guardian of Joseph Escovitz by the Veteran's Administration paid as a result of a mistake and, if so, did this sum ever become part of the estate of said incompetent, Joseph Escovitz?

Counsel for the administrator makes no mention of the fact that the money in question was paid by the Veteran's Administration under a mistake of fact; neither does he deny this allegation nor does he attempt to show that the incompetent's estate was entitled to the money in question or that the United States statute, prohibiting payment to missing veterans, is not applicable. His primary argument appears to be that this dispute is no different than any other claim levied against a decedent's estate and hence should be administered by the administrator in the orphans' court.

The position of the counsel for the Veteran's Administration is that the money paid by it to the incompetent's guardian from August 5, 1950, to March 31, 1953, was paid under mistake of fact and never became part of the incompetent's estate. Therefore it cannot be administered by the administrator and must be returned by the guardian.

Counsel for the Administrator of Veteran's Affairs relies upon the following Veteran's Administration Regulation to sustain its position that the funds thus paid under mistake of fact never became part of the incompetent's estate.

Veteran's Administration Regulation 38 CFR 3.281, Disappearance of incompetent veterans; payment to

dependents-(*a*), under Veteran's Regulation No. 1 (*g*), 38 U. S. C. A. ch 12A, provides, inter alia, as follows:

"Where an incompetent veteran receiving or entitled to receive compensation under either Part I or Part II of the Veteran's Regulation No. 1 series, disappears or has disappeared and for 90 days or more thereafter his whereabouts remains unknown to the members of his family and the Veteran's Administration, there will be paid the dependents of the veteran the amount authorized for surviving dependents under the Veteran's Regulation No. 1 series, Parts I and II respectively, effective as of the day following the discontinuance of the veteran's award, date of veteran's disappearance, or April 1, 1935 (effective date of Veteran's Regulation No. 1(g)), whichever is the later: Provided, That in no event will the monthly amount paid to dependents hereunder exceed the amount payable to a veteran at the time of his disappearance; . . ."

This regulation is based upon the Act of August 16, 1937, 50 Stat. 662, 38 U. S. C. A. 472e, which was repealed on June 17, 1957, effective January 1, 1958. However, the repeal of this statute has no effect upon this case. It is our opinion that the regulation and law cited govern this case. The facts indicate that the Veteran's Administration was not notified of the disappearance of the incompetent until March 24, 1953, when it was told that the whereabouts of the incompetent had been unknown since August 5, 1950. Payments were stopped on March 31, 1953. It is clear that under the regulation cited the missing incompetent was not entitled to payments after his disappearance. If the Veteran's Administration had been notified on August 5, 1950, of the disappearance of Joseph Escovitz, it would have been prohibited from making any further payment. The Veteran's Administration did not learn of the disappearance of the incompetent until

31 months later and money it now seeks to receive was paid under the mistaken belief that the whereabouts of decedent was known. Hence under the facts of this case it appears clear that the incompetent was not entitled to receive payments during the period in question.

There is no denial that the Veteran's Administration made payments to the guardian of the estate of the incompetent, Joseph Escovitz, from August 5, 1950, to March 31, 1953, under a mistake of fact believing said veteran to be alive when as a fact he had disappeared and his whereabouts was unknown. These payments were made in violation of the United States statute cited supra. We are of the opinion that this case is governed by said statute. The payments made by the Veteran's Administration during this period of time were made under a mistake of fact. As to the moneys thus paid to the guardian, a constructive trust arose.

The following excerpts from Scott on Trusts, vol. IV, (2d Ed. 1956) pertaining to the law of constructive trusts, are applicable to this case:

"A constructive trust arises where a person who holds title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it": §462, p. 3103.

"Where the title to property is acquired by one person under such circumstances that he is under a duty to surrender it, a constructive trust immediately arises": §462.4, p. 3109.

"A constructive trust may arise, . . . even though the acquisition of the property was not wrongful. It arises where the retention of the property would result in the unjust enrichment of the person retaining it. Thus a constructive trust arises where the title to

property is acquired through a mistake, . . .": §462.2, p. 3106.

"In most cases where a constructive trust is enforced against one person in favor of another, the result is to restore the status quo. If the defendant were permitted to retain the property he would be unjustly enriched and to the same extent the plaintiff would be unjustly deprived of the property": §462.2, p. 3106-7.

"If the plaintiff offers evidence that the defendant has by fraud, undue influence or mistake acquired the title to property, it would seem that he should be permitted to enforce a constructive trust of the property when he proves the facts by the preponderance of evidence": §462.6, p. 3113.

The administrator's claim is based upon the provisions of section 613 of the Incompetents' Estates Act of February 28, 1956, P. L. 1154, 50 PS §3613, which provides as follows:

"Upon the audit of the account for the guardian of a person who has died during incompetency, the auditing judge or auditor passing on the account shall not pass upon any claims against the estate of the incompetent other than necessary administration expenses, including compensation of the guardian and his attorney. All claims remaining unpaid at the incompetent's death shall be presented to the personal representative."

However, the claim made by the Veteran's Administration for the return to it by the guardian of funds paid under a mistake of fact is not such a claim as is comprehended and included within the provisions of the Incompetents' Act here cited.

There are certain provisions of the Orphans' Court Act of August 10, 1951, P. L. 1163, 20 PS §2080.301, which although not discussed by either party to this

controversy are relevant and have been considered by the court. Article III, sec. 301, Exclusive Jurisdiction, provides:

"The orphans' court shall have exclusive jurisdiction of: . . .

"Incompetents' Estates. The administration and distribution of the real and personal property of the estates of incompetents, except where jurisdiction thereof already has been acquired by another Pennsylvania court. Another court which has acquired jurisdiction of the estate may transfer it to the orphans' court": Added by Act of February 10, 1956, P. L. 1022, amended by Act of July 11, 1957, P. L. 791.

Where another court has acquired jurisdiction of incompetent's estate prior to September 1, 1957, it may be transferred to the orphans' court.

"(13) Title to Personal Property. The adjudication of the title to personal property in the possession of the personal representative, or registered in the name of the decedent or his nominee, or alleged by the personal representative to have been in the possession of the decedent at the time of his death."

Comment: "This . . . was intended to obviate, whenever possible, a preliminary dispute as to whether the Orphans' Court has jurisdiction to determine the title to the disputed property." There is no statutory precedent for it. In some cases, a right to trial by jury may exist.

Thus from the above it would appear that if the court determines that the guardian had actual possession of the funds of the incompetent as opposed to possession as constructive trustee for the Veteran's Administration, the orphans' court would have jurisdiction of this case and the funds should then be given to the administrator for distribution.

It is our conclusion that the funds in question never became part of the estate of the incompetent, Joseph

Escovitz, since they were paid by the Veteran's Administration under a mistake of fact and contrary to the regulations and laws of the United States Government. As a result, the guardian held said funds as a constructive trustee. The court of common pleas has jurisdiction to determine the issue raised by these proceedings. The rule to show cause will be discharged and the guardian of the estate of Joseph Escovitz will be directed to pay to the Veteran's Administration the sum of $3,986 and the balance to the Administrator of the incompetent.

### Order

And now, to wit, November 28, 1958, the rule to show cause why the sum of $3,986 claimed by the Veteran's Administration should not be paid to the administrator of the estate of Joseph Escovitz, a presumed decedent, is discharged.

The Mellon National Bank and Trust Company, successor guardian of the estate of Joseph Escovitz, an incompetent, is directed to pay to the Administrator of the Veteran's Administration the sum of $3,986 and the balance held by it to Henry Escovitz, the Administrator of the estate of Joseph Escovitz, a presumed decedent.

Eo die exception noted and bill sealed.